### ANDREW A. FLORY v. CHARLES C. COMSTOCK.

*Chattel mortgage—Given to secure partnership debt—Will not lose priority, by failure of mortgagee to renew same, over second mortgage—Given on dissolution of firm to retiring partner, for individual debt, by partner who succeeds to assets and assumes liabilities of the firm—Stipulation in mortgage that it is given subject to prior mortgage—Renders filing and renewal unnecessary to maintain such priority—Which can never be affected except by agreement of the parties—Or payment of first mortgage—Such stipulation runs with the mortgage—Is intended to take the place of filing, as between parties bound thereby when made—Or who become subsequently interested in the mortgaged property — Briggs v. Mette, 42 Mich. 12, distinguished from case at bar.*

*Enos* and *Peter* Flory mortgaged certain partnership property to defendant to secure the purchase money, and soon afterwards *Enos* gave defendant a second mortgage on *other* firm property to secure a partnership debt, which second mortgage was kept alive by proper renewals. On April 1, 1881, the firm was dissolved, *Peter* Flory taking the *joint* property and assuming the *firm* debts; and on Nov. 28, 1882, he mortgaged to defendant the property covered by the *two* prior mortgages, for $500, being the sum due thereon, which mortgage was intended as additional security therefor. This mortgage

---

[1] See "*Homestead*," 60 Mich. 687–8, for valuable cases on the question of *abandonment* of homestead, its *selection*, etc.

was never renewed, but *all three* were filed in the proper office. December 1, 1882, *Peter* mortgaged the same property to *Enos* to secure a note due him, which mortgage was duly filed and thereafter renewed, and in which the mortgagor covenanted that the property was free from all incumbrances, except the $500 mortgage held by the defendant. In April, 1884, defendant sold the property upon his last two mortgages, and applied the proceeds in payment of his debt. Nov. 24, 1884, *Enos* assigned *his* mortgage to plaintiff, *without consideration*, who brought this suit, claiming priority for said mortgage on account of defendant's failure to renew his $500 mortgage. Upon this state of facts the Court held:

1. A second mortgagee whose mortgage was taken subject to a prior mortgage duly filed, given to secure a debt of a firm of which he was *then* a member, cannot claim priority for a mortgage executed *to* him by the *other* copartner by reason of the non-renewal of the *prior* mortgage. No such advantage was ever intended by the statute, under *such* circumstances, its object being to prevent, not facilitate, fraud.

2. Where a mortgage contains a clause showing that it is made subject to a prior one, filing is unnecessary to maintain such priority, which can never be secured for the *second* mortgage, as against the *first*, except by the agreement of the parties. Such a stipulation runs with the mortgage, is binding upon the parties, and continues during the life of the security; and it is intended to take the place of the statutory filing, as between all parties bound thereby when it is made, or who become subsequently interested in it or the mortgaged property.

3. The Court distinguishes the case of *Briggs v. Mette*, 42 Mich. 12, from the one at bar. (See opinion pp. 527–8.)

Error to Kent. (Montgomery, J.)    Argued May 11, 1886.    Decided June 10, 1886.

Case. Defendant brings error. Reversed. The facts are summarized at commencement of head-notes.

*E. D. Comstock* (*More & Wilson*, of counsel), for appellant:

No one not a purchaser or incumbrancer in good faith can invoke the protection of How. Stat. § 6196, and one who takes a mortgage to secure a precedent debt is not such an incumbrancer: *Dickerson v. Tillinghast*, 4 Paige, 215; *Van Heusen v. Radcliff*, 17 N. Y. 580; *Thompson v.*

*Van Vechten*, 27 Id. 568 ; *Jones v. Graham*, 77 Id. 628 ; *Wiles v. Clapp*, 41 Barb. 645.

The rule has been recognized by this Court in *Kohl v. Lynn*, 34 Mich. 360 ; *Fearey v. Cummings*, 41 Id. 376 ; *Waite v. Mathews*, 50 Id. 392.

*Actual* notice of defendant's prior mortgage is imputable to plaintiff from the recital in his mortgage: *Baker v. Mather*, 25 Mich. 51; *Tolbert v. Horton*, 31 Minn. 518 ; Wade on Notice, §§ 15, 308, *et seq.*; *White v. Foster*, 102 Mass. 375.

A mortgagee with *actual* notice of a prior mortgage is not an incumbrancer in good faith within the meaning of the statute, and as against such subsequent mortgagee the prior mortgage does not cease to be valid although the statutory affidavit is not filed: *Wetherell v. Spencer*, 3 Mich. 123 ; *Baker v. Mather*, 25 Id. 51; *National Bank v. Sprague*, 21 N. J. Eq. 530–6 ; *Hill v. Beebe*, 13 N. Y. 556, 561 ; *Lewis v. Palmer*, 28 Id. 271–7 ; *Gildersleeve v. Landon*, 73 Id. 609 ; *Sanger v. Eastwood*, 19 Wend. 515.

*Taylor & McBride*, for plaintiff:

The failure of the defendant to renew his $500 mortgage gave priority to plaintiff's mortgage, which had been duly renewed.

This proposition is settled in favor of plaintiff by *Briggs v. Mette*, 42 Mich. 12, and the same doctrine is recognized in *Griffin v. Forrest*, 49 Id. 309.

SHERWOOD, J. On the twenty-ninth day of November, 1880, the defendant leased a farm, lying near Grand Rapids, to Enos and Peter Flory, and at the same time sold them stock and other personal property to enable them to carry on the milk business, and took back a chattel mortgage for the purchase price, viz., $429.

The Florys were brothers and copartners in the trade, and during the winter of 1880 and 1881, after making the lease and purchasing the stock, purchased of the defendant a quantity of hay and other feed, to the value of $200, for which Enos Flory, on the twenty-second day of March, 1881, gave defendant a chattel mortgage on ten cows, which were partnership property of the Florys, but not covered by the first mortgage.

The Florys dissolved partnership on the first day of April, 1881, Enos going out, and Peter remaining and going on with the business, and by an arrangement between them Peter took the partnership stock, and agreed to pay the debts, being the two mortgages.

On the twenty-eighth day of November, 1882, Peter Flory and wife executed a mortgage to the defendant, covering the property described in the other two, for the sum of $500, due on or before April 1, 1883; which mortgage was intended as additional security for the amount then remaining unpaid upon the other two, neither of which had been released, and all being for a partnership indebtedness. No renewal of this mortgage was ever made.

Under the arrangement made between Peter and Enos, it appears Peter became indebted to Enos $500 and over, and which remained in open account until December 1, 1882, when Peter gave a chattel mortgage to Enos covering the property mortgaged, as above stated, to the defendant, for the sum of $588.44, to secure a note of that amount falling due January 1, 1885.

This mortgage contained the following clause, viz. (after describing the property):

"Which said above-described goods, chattels, and property, at the date hereof, * * are free and clear from all liens, conveyances, incumbrances, and levies, except a mortgage to C..C. Comstock, on said stock, for $500."

This mortgage was, on the twenty-fourth day of November, 1884, assigned by Enos to his son, Andrew A. Flory, the plaintiff, for the purpose of enabling him to prosecute this suit; and it further appears that he gave no value for the same.

The mortgage was duly renewed on the twenty-second day of November, 1883, and again November 25, 1884, by filing renewal affidavits. All the mortgages were filed in the proper office where made, and Enos Flory is a party to the first two.

By virtue of the defendant's $200 and $500 mortgages last made, he took possession of the mortgaged property, and

sold the same at public auction, and applied the proceeds to the payment of his indebtedness, on the twelfth day of April, 1884. On the twentieth day of February, 1885, plaintiff brought suit for the value of the property against the defendant, relying upon the mortgage given by Peter to Enos, and assigned to him, for recovery.

The case was tried in the Kent circuit, and, under the charge of the court, the jury rendered a verdict for the plaintiff for the sum of $565.92. Defendant brings error.

The assignments of error are seven in number, but may be considered under two heads:

1. Did defendant, by failure to renew his $500 mortgage (by filing the affidavit required by statute), which became due April 1, 1883, under the circumstances stated, lose priority over the mortgage of plaintiff, which had been duly renewed?

2. Could Peter Flory, by turning out to defendant the property in question, to pay a partnership debt, cut off the plaintiff's mortgage?

The main questions involved are also clearly presented in the following requests of defendant's counsel in their requests to charge, and which were refused by the court, viz.:

"3. If, at the time of the conversion charged against defendant, Enos and Peter Flory, as partners, were indebted to defendant in amount equal or exceeding the value of the goods covered by plaintiff's mortgage, then, if defendant applied the amount realized from the sale of said goods to the reduction of said indebtedness, and the goods were turned out by Peter (one of said partners) in payment of said debt, then defendant is not liable, and your verdict must be for defendant."

"6. The priority of defendant's mortgage being recognized by plaintiff's mortgage being made virtually subject thereto, plaintiff cannot now dispute the validity of defendant's mortgage because of no affidavits of renewal being filed, they not being required in order to entitle defendant's mortgage to preference over plaintiff's."

"8. It appears from the evidence that the mortgage, under which plaintiff claims, is, by its terms, subject to the mortgage made by Peter Flory to defendant for $500. That was notice to Enos Flory and to plaintiff of defendant's mort-

gage, and by reason of such notice the priority of defendant's mortgage cannot be questioned by plaintiff. As against plaintiff's mortgage it was unnecessary for defendant either to record or renew his mortgage."

"11. It appears from the evidence that prior to April 1, 1881, Enos and Peter Flory were partners, and that on that day, or the day before, the partnership was dissolved, and a settlement had, by which Peter was found to be indebted to Enos in the sum to secure the payment of which plaintiff's chattel mortgage was given, December 1, 1882. Now, inasmuch as plaintiff's mortgage was made after defendant's $500 mortgage, and to secure an indebtedness which accrued prior to defendant's said mortgage, plaintiff's mortgage is not a *bona fide* incumbrance as to that of defendant, and defendant's said mortgage is a prior lien to that of plaintiff's, although it was not renewed."

It is claimed by counsel for plaintiff this case should be ruled by *Briggs v. Mette*, 42 Mich. 12. We do not, however, take this view of the case. The statute invoked by the plaintiff will be found in the margin.[1] In the case of *Briggs v. Mette* it does not appear that the holders of the second mortgage had any actual notice of the first; neither does it appear that the second mortgage was given for a precedent debt; nor does it appear that the second mortgagee was liable for the indebtedness which was secured by the first mortgage. All of these facts appear in this case; and, in addition thereto, that the second mortgage contains a clause expressly making it subject to the first mortgage. Besides, *Briggs v. Mette* was decided previous to the statute providing for the dis-

[1] "Every such mortgage shall cease to be valid, as against the creditors of the person making the same, or subsequent purchasers or mortgagees in good faith, after the expiration of one year from the filing of the same, or a copy thereof, unless within thirty days next preceding the expiration of the year the mortgagee, his agent or attorney, shall make and annex to the instrument or copy on file as aforesaid an affidavit setting forth the interest which the mortgagee has, by virtue of said mortgage, in the property therein mentioned; upon which affidavit the township or city clerk shall indorse the time when the same was filed: *Provided*, that such affidavit, being made and filed before any purchase of such mortgaged property shall be made, or other mortgage received or lien obtained thereon, in good faith, shall be as valid to continue in effect such mortgage as if the same were made and filed within the period as above provided." How. Stat. § 6196.

charge of chattel mortgages after payment, and authorizing compulsory measures to be taken for that purpose.[1]

The second mortgagee, who takes his mortgage subject to a prior one, which has been duly filed, cannot, by the neglect of the first mortgagee to file renewal affidavits, obtain a preference for his mortgage, when the first mortgage was given to secure the second mortgagee's own indebtedness, and that of his partner, from the latter of whom he receives his mortgage. No such advantage was ever intended by the statute, under such circumstances. The object of the statute was to prevent, and not to facilitate, fraud, and any construction which would accomplish the latter would be wrong and unjust.

Where a subsequent mortgage contains a clause that it is made subject to a prior one, as between those mortgages filing is not necessary to maintain the relation the two sustain to each other until the first is paid. Priority of the second mortgage, as between the two, can never be obtained, except upon the agreement of the parties. Such stipulation runs with the mortgage, and, whether it is on file or off, always tells the same story to all persons whose interests require its perusal. It is a stipulation, binding upon the parties, show-

---

[1] How. Stat. § 6201, provides for the discharge of chattel mortgages by an entry on the record required to be kept by the town or city clerk (How. Stat. § 6195), signed by the mortgagee or his personal representative or assignee, acknowledging satisfaction of the mortgage. This entry is to be made in the presence of such officer, who is required to witness the same; and has the same effect as a deed or instrument of release duly acknowledged and filed with said officer.

On such satisfaction being *thus* entered, the officer is to deliver the mortgage (or copy) to the mortgagor on request, and make an entry of the date of delivery, and to whom delivered, on said record.

How. Stat. § 6202, provides that if the parties authorized to discharge a mortgage under section 6201, after *full* performance of *its* conditions, whether before or after a breach thereof, or after a tender of the whole amount due and payable thereon, if the same be entirely due and payable, and of their lawful charges, shall, for *seven* days after being requested in writing by the parties interested, refuse or neglect to discharge and deliver the mortgage, as provided in section 6201, or to execute and deliver a discharge or release of such mortgage, they shall be liable to the mortgagor, his heirs or assigns, in the sum of *twenty-five* dollars damages, and also for all *actual* damages occasioned by such neglect or refusal to the person performing such conditions or making such tender, or to *any one* having an *interest* in the mortgaged property, recoverable in an action on the case, or in a suit in equity to procure such discharge, with *double* costs, in the *discretion* of the court.

ing how the mortgaged property is to be regarded, and continues so long as the mortgage continues. It is intended to take the place of filing, as between all parties bound thereby when it is made, or who become subsequently interested in it or in the mortgaged property. It is a continued notice to all persons claiming by, through, or under it, and takes the place of statutory filing.

The record shows that Enos is the real party plaintiff; that the plaintiff gave no consideration for the mortgage, and holds it for his father; and that his rights are all subject to the equitable rights of the defendant. He can claim nothing Enos could not, were the latter plaintiff, and is chargeable with all the equities and knowledge of the same that exist in favor of the defendant, as he gave nothing for the mortgage, and holds it as mere trustee for his father. He is not an incumbrancer in good faith, within the meaning of the statute, as against the defendant, as we have already said that the mortgage of defendant did not cease to be valid by neglect to file renewal affidavits.

It is of little consequence what information Enos Flory obtained from Peter in regard to the payment of defendant's mortgages. Enos was one of the makers of part of defendant's mortgages, and all were made to secure his indebtedness. The proper place to seek such information was at the township clerk's office, or by going to his creditors. He certainly should know when his own indebtedness is paid,—at least, he will be presumed to know that fact.

As to the priority of liens of the several mortgages, the court said to the jury:

"I therefore instruct you that the time having elapsed for the filing of an affidavit, the plaintiff's mortgage is entitled to priority over the mortgage of the defendant, Comstock, of $500, and the defendant cannot assert this mortgage as a lien upon the property as against the mortgage of the plaintiff."

This, we think, was error, under the view taken of the case; and we also think the requests of defendant's counsel above given were proper to go to the jury; and for these errors we

think judgment at the circuit should be reversed, and a new trial granted.

The other Justices concurred.